UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JACQUELINE JACKSON O/B/O OF THE MINOR CHILDREN, ERIYANA GRANT, EARL GRANT & SKYLAR JACKSON | * | CASE NO: |
| VS. | * | |
| CITY OF MONROE, LOUISIANA | * | |
| VICTOR ZORDAN INDIVIDUALLY | * | |
| AND IN HIS CAPACITY AS CHIEF | * | |
| OF POLICE OF THE MONROE POLICE | * | |
| DEPARTMENT, TIMOTHY CRUM, | * | |
| TIMOTHY ANTLEY, ROBERT SIMMS, | * | |
| "ABC INSURANCE COMPANY", | * | |
| "XYG INSURANCE COMPANY" | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**COMPLAINT WITH JURY DEMAND**

**NOW INTO COURT**, through undersigned counsel, comes the Plaintiff, Jacqueline Jackson, Natural Tutrix, on behalf of the minor children, Eriyana Grant, Earl Grant, and Skylar Jackson, surviving legal heirs of the Decedent, EARL DEWAYNE GRANT, domiciled in the parish of Ouachita, State of Louisiana respectfully represents in this Wrongful death and survival action, in regards to the F:

1.

**PARTIES**

Plaintiff, Jacqueline Jackson, Natural Tutrix, on behalf of the minor children, Eriyana Grant, Earl Grant, and Skylar Jackson, surviving legal heirs of the Decedent, EARL DEWAYNE GRANT, domiciled in the parish of Ouachita, State of Louisiana respectfully represents in this Wrongful death and survival action, 42 U.S.C. 1983:

1. Made Defendants herein are the following:

a) CHIEF VICTOR ZORDAN, is the Chief of Police of the Monroe Police Department ("MPD"), a person of full age and majority domiciled in Ouachita Parish. He is sued in his individual and official capacity;

b) CITY OF MONROE, LOUISIANA, a local government entity and body politically created by statute, being a municipality, and political subdivision of the State of Louisiana, but not an agency, or department, or arm of the State of Louisiana, and owns, operates, manages, directs, and controls the Monroe Police Department ("MPD"), which employs Timothy Crum, Timothy Antley, and Robert Simms;

c) TIMOTHY CRUM, was at all relevant times to this complaint an officer in the Monroe Police Department, is a person of full age and of majority, domiciled in Ouachita Parish. S/he is sued in his individual capacity;

d) TIMOTHY ANTLEY, was at all relevant times to this complaint an officer in the Monroe Police Department, is a person of full age and of majority, domiciled in Ouachita Parish. S/he is sued in his individual capacity;

e) ROBERT SIMMS, was the Interim Chief of Police of the Monroe Police Department ("MPD"), a person of full age and majority domiciled in Ouachita Parish. He is sued in his individual and official capacity;

f) ABC INSURANCE COMPANY, an insurance company authorized to do, and doing business in the State of Louisiana providing general liability coverage for Chief Zordan, City of Monroe and Defendants: Timothy Crum, Timothy Antley, and Robert Simms;

g) XYZ INSURANCE COMPANY, an insurance company authorized to do, and doing business in the State of Louisiana providing EXCESS liability coverage to the MPD, its agents, and the City of Monroe;

THIS PETITION PUTS ON NOTICE ANY EXCESS POLICY COVERING THE CITY OF MONROE, CHIEF VICTOR ZORDAN, ANY EMPLOYEE OF THE MONROE POLICE DEPARTMENT, AND ANY POTENTIAL UNION POLICY COVERING THE

INDIVIDUAL LOUISIANA POLICE DEPARTMENT NAMED INDIVIDUALLY IN THIS SUIT.

2.
**JURISDICTION AND VENUE**

The United States District Court has jurisdiction over the subject matter of this complaint under 42 U.S.C. 1983 and 28 U.S.C. 1331, 1343(a)(3), 1367(a), La. Code Civ. Proc. Ann. Arts. 1 to 6 and 8 to 10. The Western District of Louisiana is the appropriate venue to bring this complaint, because the facts that give rise to Plaintiff's claims all took place within the Western District of Louisiana.

3.

**FACTUAL ALLEGATIONS SURROUNDING August 26, 2020**

At the time of this incident, Plaintiff, Jacqueline Jackson, as the natural tutrix pursuant to Article 197 Louisiana Code of Civil Procedure, alleges that Earl Grant was in fact the father of three minor children, named Eriyana Grant, born September 3, 2014, Earl Grant, born February 22, 2016, and Skylar Jackson, born June 12, 2019, that were born of the relationship with Jacqueline Jackson.

On August 26, 2020, Defendant, Robert Simms, was dispatched to the area of Winnsboro Road and Wilson Street in reference to a crash investigation, whereby Mr. Grant was involved in a car crash with another driver, which caused a serious impact. (Exhibit A) Monroe Police Department contacted Louisiana State Police Detectives in reference to the in-custody death that later ensued. According to the Louisiana Department of Public Safety & Corrections Office of State Police Initial Complaint/Report, Captain Marlow stated that Mr. Grant was found standing on the top of the 2013 Toyota Highlander and would not comply with officers' requests and

attempted to flee the scene. It further states that officers deployed a taser and struggled to take Mr. Grant into custody and handcuff him. Captain Marlow reported that the officers searched Mr. Grant for weapons and ID and found him unresponsive later. Subsequently, Captain Marlow asserts that EMS and Fire were requested and CPR was initiated. Lastly, the report indicates that Mr. Grant was transported to St. Francis Hospital by ambulance and later pronounced dead in the emergency room. (Exhibit B)

4.

Mr. Grant posed no threat and was simply walking away in a daze, due to the heavy impact of the car accident. After being approached by Defendant Robert Simms, Mr. Grant allegedly was seen on top of the 2013 Toyota Highlander and later complied with Defendant Simms when asked to remove himself from the top of the vehicle.

5.

Defendant Simms later requested Mr. Grant to stop walking away; however, Mr. Grant proceeded to walk away in a manner that revealed that he did not fully understand or ascertain what Defendant Simms was commanding. Neither Defendant Simms nor any other officer in the vicinity attempted to offer medical attention to Mr. Grant, even after learning that he was in a traumatic car accident.

6.

Defendant Simms used unreasonable, unjustified and excessive force when he proceeded to discharge his taser at least two times as evidenced by the Short Taser Report. Mr. Grant posed

no threat whatsoever in the matter. (Exhibit C) Defendant Simms was joined by Defendants Crum and Antley who assisted in the arrest of Mr. Grant, which the investigative report states was a struggle; However, Mr. Grant never attempted to batter or strike any of the Defendants at any point.

7.

Mr. Grant cried out for help when being arrest by all three Defendants in this matter after being tased unreasonably. Unfortunately, after the Defendants used excessive force against Mr. Grant, Defendants all failed to offer medical attention or help immediately after the arrest. There was a period of time that matriculated before Defendants tried to offer any type of care. Subsequently, Defendants requested EMS and Fire for Mr. Grant.

8.

Mr. Grant's current medical conditions were unknown at the time, which could have contributed to his overall state at the time, along with the physical trauma he endured. An autopsy investigative report was conducted by the Ouachita Parish Coroner's Office, which included an electrical conduction weapon barb present in the left forearm, superficial abrasion and subcutaneous hematoma of central bac, superficial abrasion of left shin, fracture of anterior right 5th and left 4th ribs with scan surrounding hemorrhage amongst other findings. Additionally, the autopsy investigative report found the electrical conduction weapon application to be one of the causes of Mr.Grant's death (Exhibit C)

Dr. Frank Peretti conducted a Toxicology Report on Mr. Grant. (Exhibit D).

9.

Defendants later proceeded to search Mr. Grant's vehicle. (Exhibit E).

10.

A witness came forth to give her statement concerning her account of what happened to Mr. Grant on August 26, 2021. Louisiana State Police Investigator John Asmussen conducted the interview and provided a report on the matter. (Exhibit F).

11.

Defendants Timothy Crum, Timothy Antley, and Robert Simms were all law enforcement agents participating in response to a complaint of motor vehicle accident made on Winnsboro Road at Wilson Street.

12.

At all times relevant to this complaint, all Defendants acted in concert and conspiracy and were jointly and severally responsible for the harms caused to Mr. Grant. At all times to this Complaint, all defendants acted under the color of state law. The officer's report is not completely factual and is lacking many details with regards to omitting the fact that the Officers failed to offer medical attention to Mr. Grant upon arriving on the scene after the accident and after using excessive force of tasing Mr. Grant without offering immediate medical attention.

13.

Based on the MPD officers placed on administrative leave, the Plaintiffs aver that

Timothy Crum, Timothy Antley, and Robert Simms were but some of the MPD officers that conspired together with the cover-up to obstruct justice and violate Earl Grant's rights.

14.

There was no legal cause to justify the use of excessive force against Mr. Grant, and the force used against Mr. Grant was unreasonable and excessive. At no time did Mr. Grant make any threats or initiate any confrontations with either civilians or officers. At no time did Mr. Grant threaten anyone with a weapon. At no time did Mr. Grant verbally make any threats or statements of intention to harm anyone.

15.

As a direct result and proximate result of the conduct of all Defendants, Mr. Grant ultimately became unresponsive and died in the custody of Monroe Police Department.

**FACTUAL ALLEGATIONS SURROUNDING EMPLOYMENT, TRAINING, SUPERVISION, AND DISCIPLINE OF MPD OFFICERS**

The Ouachita Parish and City of Monroe utilizes and employs its own police department known as the MPD, which is responsible for decision making and policy making for the MPD. The excessive force, misrepresentations, and illegal conduct sued upon herein occurred in Ouachita Parish, and in the exclusive territorial jurisdiction of the Monroe Police Department and under the care of the City of Monroe.

16.

In Chief Zordan's official capacity, he is responsible for adopting, implementing, promulgating, and enforcing policies, customs, and practices pertaining to making arrest and

preserving peace in the City of Monroe.

17.

Additionally, the City of Monroe is responsible for the screening, hiring, disciplining, training, supervising, and the retraining of Monroe Police Officers to ensure each officer was and is qualified and properly trained to perform the duties and functions of a peace officer including making arrests, preserving the peace, and the constitutional use of deadly force. The City of Monroe has a responsibility in supervising and enforcing and implementing these trainings, discipline, and enforcement of the policies, customs, practices.

18.

Based on the extreme misconduct of Defendants Timothy Crum, Timothy Antley, and Robert Simms and upon information and belief, Defendants were not properly trained, supervised, and/or disciplined with regard to proper police practices. Further, all Defendants acted to conspire to cover up the incident in its entirety.

19.

Upon information and belief, in willful, reckless, and callous disregard to Mr. Grant's life and rights under federal and state law, Defendants Timothy Crum, Timothy Antley, and Robert Simms did not have an adequately trained upon, promulgated, and enforced de-escalation policy in place for the City of Monroe at all relevant times upon which officers were sufficiently or adequately trained so as to know how to properly de-escalate situations.

20.

This incident shows that Mr. Grant is not an outlier but rather part of a continuing pattern, custom, and practice of Monroe Police Department. Further, there is a history of not properly disciplining or firing officers when they engage in illegal or improper conduct, including excessive use of force and improper deadly use of force.

21.

Defendants actions were a product of this environment and undertaken pursuant to de facto policies, practices, and/or customs—both written and unwritten—of the MPD and the City of Monroe. Defendant, Victor Zordan, is guilty of the following wrongful acts, including but not limited to:

1. Failing to properly hire, supervise, and train MPD Officers;

2. Failing to promulgate, train, and enforce an adequate and constitutional use of force policy;
3. Failing to promulgate, train, and enforce an adequate and constitutional lethal use of force policy;
4. Failing to promulgate, train, and enforce an adequate and constitutional de-escalation tactics;
5. Failing to promulgate, train, and enforce an adequate and constitutional methods through which MPD officers should interact with citizens who are African American and homeless;
6. Failing to promulgate, train, and enforce an adequate and constitutional non-discriminatory law enforcement practices to protect African-American citizens of Monroe;
7. Failing to reprimand and discipline MPD Officers who engage in misconduct;

8. Failing to retrain and/or otherwise control MPD Officers who engage in excessive force and/or unjustified shooting against civilians;

9. Failing to follow appropriate policies and procedures to address and correct repeated use of excessive force;

10. Failing to adequately investigate complaints and allegations of excessive force and other misconduct by MPD Officers;

11. Failing to require and enforce MPD officers to accurately and timely report misconduct they are aware other MPD officers are conducting or have conducted;

12. Failing to retrain and otherwise control MPD Officers who engage in excessive force and unjustified use of deadly force;

13. Failing to properly investigate allegations prior to issuing arrest warrants;

14. Tacitly approving of MPD Officers using their power and position to interfere with other citizens' rights;

15. As a matter of both policy and practice the City of Monroe and the MPD facilitating this type of misconduct by failing to protect civilians from reckless indifference of Defendant's agents, servants, and employees in its Police Department; and

16. Allowing the practice and custom of a "police code of silence," resulting in MPD Officers refusing to report instances of police misconduct of which they are aware.

17. Failing to train, supervise, and discipline MPD officers regarding providing honest and accurate accounts of officer involved shootings to investigating authorities;

22.

As a direct result and proximate result of the conduct of Defendants, Mr. Grant suffered extraordinary damages, which ultimately caused his death.

23.

## CAUSES OF ACTION

**Count I**
**Federal Constitutional Claims**

**Plaintiff v. Defendants all Defendants**

The actions of all Defendants in conspiring to cover up the incident and specifically Defendants Timothy Crum, Timothy Antley, and Robert Simms violated Mr. Grant's rights under the Fourth and Fourteenth Amendments to be free from the unlawful use of force.

24.

**Count II**
**Federal Constitutional Claims**

**Plaintiff v. Defendants in his/her Official Capacity and the City of Monroe.**

The actions or inactions of Defendant Zordan in his Official Capacity, All Defendants in his/her official capacity, and Defendant City of Monroe violated Mr. Grant's Fourth and Fourteenth Amendments Rights to the U.S. Constitution.

25.

**Count III**
**Federal Constitutional Claims**

**Plaintiff v. Defendant the City of Monroe, Defendant Zordan in his Official Capacity, and all Defendants in his/her Official Capacity**

**Federal Constitutional Claims**
The violations of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, Plaintiff's damages, and/or the conduct of the individual Defendants were directly and proximately caused by the actions and/or inactions of the Defendant the City of Monroe and Defendant Zordan in his Official Capacity which has encouraged, tolerated, ratified, and has been deliberately indifferent to the following policies, patterns, practices, and customs, and to the need for more or different training, supervision, investigation, or discipline in the areas of:

1. Use of force by police officers;
2. Police officers' duties and responsibilities to engage in proper de-escalation techniques;
3. The proper exercise of police powers, including not limited to the making of an arrest and the use of deadly force;
4. Police Officers duties not to attempt to kill its citizens;
5. Police Officers duties not to un-necessarily use deadly force;
6. Non-race-based policing and use of force;
7. The failure to identify and take remedial or disciplinary action against officers who were the subject of prior civilian or internal complaints of misconduct;

8. Failing to retrain and/or otherwise control officers who engage in excessive force and/or unjustified shooting against civilians;

9. Failing to follow appropriate policies and procedures to address and correct repeated use of excessive force;
10. The hiring and retention of officers who are unqualified for their employment positions;
11. Failure to require, discipline, and supervise MPD officers for not reporting illegal, impermissible, improper, or any other conduct of other MPD officers that is unbefitting of an officer or violates MPD policies and protocols;
12. MPD's use of their status as officers to employ the use of force or to achieve ends not reasonably related to their law enforcement duties;
13. The failure of officers to follow established policies, procedures, directive, and instructions regarding arrests, use of force, and institution of criminal charges under such circumstances as presented by this case;
14. The failure to properly sanction or discipline officers who are aware of and conceal and/or aid and abet violations of constitutional rights of citizens by other Monroe Police Departments;
15. As a matter of both policy and practice the City of Monroe and the MPD facilitating this type of misconduct by failing to protect civilians from reckless indifference of Defendant's City agents, servants, and employees in its Police Department;
16. Failure to train, supervise, and discipline Officers who are not honest and accurate with investigating agencies about officer involved shootings, as well as harass and intimidate civilian witnesses.

26.

**Count IV State Law Claims**

**Plaintiff v. Defendants Timothy Crum, Timothy Antley, and Robert Simms**

Plaintiff alleges that Defendants are responsible and liable for the damages and injuries they have suffered as a result of said Defendants' actions and/or inactions pursuant to Louisiana Code of Civil Procedure Article 2315, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it"; Article 2316, which provides that "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill"; and Article 2317, which provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."

The actions and/or inactions of Defendants Crum, Antley, and Simms under the law of the State of Louisiana, constitute the torts of:

1. Assault;
2. Battery;
3. Aggravated Battery;
4. Negligent Infliction of Emotional Distress;
5. Intentional Infliction of Emotional Distress;
6. Malfeasance in Office;

27.

**Count V State Law Claims**

**Plaintiff v. Defendant Zordan in his Official Capacity, Defendant City of Monroe, and All Defendants in his/her Official Capacity.**

Plaintiff alleges that Defendant Zordan and all Defendants in his/her official capacity are responsible and liable for the damages and injuries they have suffered as a result of the Defendants' actions and/or inactions pursuant to Louisiana Code of Civil Procedure Article 2315, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it"; Article 2316, which provides that "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill"; Article 2317, which provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody"; and Article 2320, which provides that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed...responsibility only attaches, when the masters or employers...might have prevented the act which caused the damage, and have not done it."

28.

The actions and/or inactions of Defendant Zordan in his Official Capacity and Defendant City of Monroe, under the law of the State of Louisiana, constitute the torts of:

1. Assault;
2. Battery;
3. Aggravated Battery;
4. Intentional Infliction of Emotional Distress;
5. Negligent Infliction of Emotional Distress;
6. Negligent Hiring;
7. Negligent Retention;
8. Negligent Supervision;
9. Malfeasance in office;

## JURY TRIAL DEMAND

The Plaintiffs request a trial by jury.

## PRAYER FOR RELIEF

The Plaintiffs respectfully request:

1. Compensatory damages as to all Defendants;
2. Special Damages as to all Defendants;
3. Punitive damages as to all Defendants;
4. Reasonable attorneys' fees and costs as to all Defendants; and
5. Such other and further relief as may appear just and appropriate

**WHEREFORE**, Plaintiffs pray after all proceedings a judgment is rendered in favor of Plaintiffs and against Defendants for all relief deemed equitable under the law including attorney's fees and costs.

Respectfully submitted,

*/s/ Donecia Banks-Miley*

Donecia Banks-Miley (#35641) PLEASANT, WILLIAMS & BANKS-MILEY LAW GROUP

901 N. 3rd Street, Monroe, LA 71201 (318) 605-4607 dbmiley@pwblaw.net

/s/ Jessica Williams

Jessica Williams (#32956) PLEASANT, WILLIAMS & BANKS-MILEY LAW GROUP

901 N. 3rd Street, Monroe, LA 71201 (318) 605-4607 jwill@pwblaw.net

/s/ Kristen Pleasant

Kristen Pleasant (#30672) PLEASANT, WILLIAMS & BANKS-MILEY LAW GROUP

901 N. 3rd Street, Monroe, LA 71201 (318) 605-4607 kpleasant@pwblaw.net

Carol Powell Lexing (#21033 ) LAW OFFICE OF CAROL D. POWELL LEXING & ASSOCIATES 2485 Tower Dr. Suite 6, Monroe, LA 71201 (318) 324-0700

Legaldove2@yahoo.com