UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

JACQUELINE JACKSON                    CASE NO.  3:21-CV-03017

VERSUS                                JUDGE TERRY A. DOUGHTY

VICTOR CHIEF ZORDAN, ET AL.           MAG. JUDGE KAYLA D. MCCLUSKY


<u>REPORT AND RECOMMENDATION</u>

Before the undersigned is a motion to dismiss for lack of personal jurisdiction and improper service of process and for failure to state a claim filed by Defendants Timothy Crum ("Crum"), Timothy Antley ("Antley"), Robert Simms ("Simms") (together, the "Officers"); Victor Zordan, Chief of Police of the Monroe Police Department ("Chief Zordan"); and the City of Monroe (the "City") (collectively, "Defendants").  [doc. #14].  Plaintiff Jacqueline Jackson, on behalf of her three minor children, E.G., E.G., and S.J.[1] ("Plaintiff"), opposes the instant motion.  [doc. #20].  For the reasons assigned below, it is recommended that Defendants' motion be granted, and Plaintiff's claims be dismissed as indicated.

I.    FACTUAL BACKGROUND

On August 26, 2020, Simms, Antley, and Crum, all police officers with the Monroe Police Department (the "MPD"), were dispatched to the scene of a car accident in Monroe, Louisiana.  [doc. #3 ¶ 3].  Simms was the first officer to arrive and found the driver of one of the vehicles, Earl Grant ("Grant"), standing on top of his vehicle.  *Id.*  After Simms instructed Grant to climb down from his vehicle, Grant complied, but began to walk away.  *Id.* at 21.  Simms

---

[1] To protect the identity of the minor children involved, they are referred to using their initials.

removed his taser, pointed it at Grant, and instructed Grant to stop walking away and "take a seat." *Id.* Grant did not comply, and Simms loudly said, "hey, stop!" *Id.* Grant stopped at a fence and put his hands on the rails, but when Simms instructed Grant to place his hands behind his back, Grant refused and began walking away again. *Id.* Simms asked Grant where he was going and when Grant did not respond, Simms gave him two more verbal commands to "take a seat." *Id.* Yet, Grant continued to walk away. *Id.* Simms eventually instructed Grant that if he did not stop, he would be tased. *Id.* Instead of tasing Grant, however, Simms holstered his taser and attempted to grab Grant's arm, meanwhile instructing him to stop. *Id.* Grant refused to stop, climbed over the fence, and continued to walk away. *Id.* Simmons deployed his taser, firing both cartridges, and Grant fell to the ground. *Id.* at 22.

Five seconds after he tased Grant, Simms notified via dispatch radio that he had deployed his taser and continued to keep Grant subdued on the ground. *Id.* At this point, Antley arrived and began assisting Simms in gaining control of Grant, who was resisting by pulling his body under his hands and attempting to stand up. *Id.* at 23.

Then, Crum arrived on the scene and helped Antley and Simms gain control of Grant, who continued to resist. *Id.* Eventually, the Officers successfully handcuffed Grant, after which they secured the taser, dispatched that Grant had been taken into custody, and sent Simms to check on the second vehicle involved in the crash. *Id.* at 23-24. Less than four minutes after Simms tased Grant and less than two minutes after Grant was taken into custody, Antley attempted to move Grant and found that he was unresponsive. *Id.* at 24. Almost immediately, paramedics arrived and began to check on Grant. *Id.* The Officers removed Grant's handcuffs, and a paramedic performed two sternal rubs. *Id.* at 25. Antley then performed a third sternal rub and began chest compressions. *Id.* Less than one minute later, the paramedics took over medical

care, and Grant was eventually transported by ambulance to the hospital and pronounced dead. *Id.*

On August 26, 2021, Plaintiff filed a wrongful death and survival action in this Court, asserting claims under 42 U.S.C. § 1983 and Louisiana state law. [doc. #1]. On November 23, 2021, Plaintiff filed her First Amended Complaint.[2] [doc. #3]. The First Amended Complaint asserts constitutional violations and state law claims against the Officers in their individual and official capacities, Chief Zordan in his individual and official capacity, the City, and unknown insurers. *Id.*

On December 7, 2021, Plaintiff filed affidavits of service which show that Antley, Simms, and Chief Zordan were served through Tomika Brown ("Brown") at the MPD. [doc. #6].

On January 14, 2022, Defendants filed the instant motion to dismiss. [doc. #14].

On March 11, 2022, Plaintiff filed an opposition to the instant motion. [doc. #20].

On March 22, 2022, Defendants filed their reply brief. [doc. #23]. Accordingly, this matter is ripe.

---

[2] Plaintiff contends that the First Amended Complaint "adopt[s] all of its earlier iteration of the initial complaint." [doc. #20, p. 8]. However, Plaintiff does not point to anything in the First Amended Complaint that refers to the Original Complaint, nor does the undersigned find any references to it. Accordingly, the undersigned will only consider the First Amended Complaint. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.") (internal citation omitted).

Plaintiff's Amended Complaint does, however, incorporate by reference the exhibits attached to the Original Complaint. Accordingly, the undersigned will consider as incorporated those exhibits. *See Ryth Props., LLC v. West*, No. 09-CV-39, 2010 WL 11527429, at *3 (E.D. Tex. May 19, 2010); *see also Oppenheimer v. F.J. Young & Co.*, 3 F.R.D. 220, 226 (S.D.N.Y. 1943).

## II.    LEGAL STANDARD

### A.  Rule 12(b)(5) Standard

A motion under Rule 12(b)(5) is proper to challenge the sufficiency of service.  "In the absence of valid service of process, proceedings against a party are void." *Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981); *see also Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *Landry v. Garber*, No. 19-CV-0367, 2019 WL 2946149, at *2 (W.D. La. June 21, 2019), R&R adopted, 2019 WL 2943409 (W.D. La. July 8, 2019) ("This is because, without valid service of process, "proceedings against a party are void because a court cannot exercise personal jurisdiction over a defendant unless he was properly served.") (citing *Aetna Bus. Credit,* 635 F.2d at 435).  When service is challenged under Rule 12(b)(5), the serving party bears the burden of proving its validity or good cause for failure to effect timely service.  *Kitchen v. Walk-On's Bistreaux & Bar*, No. 19-CV-1062, 2020 WL 2404911, at *3 (W.D. La. May 12, 2020) (citing *Sys. Signs Supplies v. U.S. Dep't of Just., Wash., D.C.*, 903 F.2d 1011, 1013 (5th Cir. 1990)).  "A return of service is prima facie evidence of the manner of service. Unless some defect in service is shown on the face of the return, a motion to dismiss under Rule 12(b)(5) requires the defendant to produce admissible evidence establishing the lack of proper service." *Flores v. Koster*, No. 11CVv-726, 2013 WL 4874115, at *2 (N.D. Tex. June 28, 2013) (internal citations omitted).  "The Court may consider affidavits or declarations in resolving Rule 12(b)(5) motions."  *Kitchen,* 2020 WL 2404911, at *1 (internal citations omitted).

If a Rule 12(b)(5) motion is granted, the Court may either dismiss the action or retain the action and quash service, then generally allow additional time for proper service. *See Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985).  If the Court dismisses

4

claims on the basis of insufficiency of service, "[d]ismissal . . . is usually without prejudice to allow plaintiff an opportunity to effect proper service." *Coleman v. Sellars*, No. 13-CV-1648, 2014 WL 1095004, at \*3 (N.D. Tex. Feb. 24, 2014) (collecting cases).

B.      *Rule 12(b)(6) Standard*

The Federal Rules of Civil Procedure allow dismissal for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  To state a claim, the pleading must contain a "short and plain statement . . . showing that the pleader is entitled to relief . . ." FED. R. CIV. P. 8(a)(2).  While the pleading need not assert detailed factual allegations, it must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A claim is plausible on its face "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 663 (2009).

To determine whether the plaintiff has stated a claim, the Court is "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced in the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010); *see also Stockwell v. Kanan*, 442 F. App'x 911, 913 (5th Cir. 2011) (per curiam) (citing *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994) ("Generally, when ruling on a Rule 12(b)(6) motion, the district court may not look beyond the pleadings. The court may, however, refer to matters of public record, as well as to documents attached to the complaint.").  However, if "'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" *Merisier v. Johnson Cnty., Texas,* No. 19-CV-2911, 2021 WL 681443, at \*11 (N.D. Tex. Jan. 14, 2021), report and recommendation adopted, 2021 WL 674123 (N.D. Tex. Feb. 22,

2021) (quoting *Rogers v. City of Yoakrum,* 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per

curiam) (quoting *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir.

2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940)).

Although "[t]he rule that attached exhibits are to be considered part of the complaint when ruling

on its sufficiency usually benefits the plaintiff," that is not always the case. *Id.* The Court must

apply the general rule of sufficiency under Rule 8, so that the exhibits govern if they "'contradict

the general and conclusory allegations of the pleading.'" *Id.* (quoting *Gill as Next Friend of*

*K.C.R. v. Judd,* 941 F.3d 504, 514 (11th Cir. 2019) (other internal quotation marks and citations

omitted). In the words of the Fifth Circuit,

> [w]hen a plaintiff attaches documents to the complaint, courts are not required to
> accept the plaintiff's interpretation of those documents. If "an allegation is
> contradicted by the contents of an exhibit attached to the pleading, then indeed the
> exhibit and not the allegation controls." *U.S. ex rel. Riley v. St. Luke's Episcopal*
> *Hosp.,* 355 F.3d 370, 377 (5th Cir.2004) (internal citation and quotation marks
> omitted). It makes no difference that a defendant authored the document; the court
> may consider it without violating the 12(b)(6) standard.

*Kamps v. Baylor Univ.,* 592 F. App'x 282, 284 n.1 (5th Cir. 2014). The Court may properly

consider a document that plaintiff attaches as an exhibit to his complaint and that he contends

supports his claim, "even if a defendant authored it." *Id.*

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8

and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback*

*Steakhouse of Fla. Inc.*, 295 Fed. App'x. 710, 713 (5th Cir. 2008) (citations and internal

quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a

precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only

a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [its] legal

argument." *Skinner v. Switzer,* 562 U. S. 521 (2011) (citing C. WRIGHT & A. MILLER, FED.

6

PRAC. & PROC. § 1219, pp. 277-78 (3d ed. 2004 and Supp. 2010)).  Although legal conclusions

may be asserted, "they must be supported by factual allegations" to gain the assumption of truth.

*Id.* at 664.  A well-pleaded complaint may proceed even if it strikes the Court that actual proof of

the asserted facts is improbable and that recovery is unlikely.  *Twombly*, 550 U.S. at 556.  Even

so, the Court may dismiss a complaint "if it clearly lacks merit – for example, where there is an

absence of law to support a claim of the sort made."  *Thurman v. Med. Transp. Mgmt., Inc.*, 982

F.3d 953, 956 (5th Cir. 2020) (citations and internal quotation omitted).

### III.    ANALYSIS

In her First Amended Complaint, Plaintiff alleges claims against Crum, Antley, and

Simms for (1) excessive force; (2) failure to render medical aid; (3) failure/delay in rendering

medical aid; (3) bystander liability; (4) conspiracy; (5) assault and battery; (6) negligent and

intentional infliction of emotional distress; and (7) malfeasance in office.  Plaintiff also alleges

claims against Chief Zordan and the City for (1) unconstitutional policies and customs; (2)

inadequate training and supervision practices; (3) ratification; and (4) vicarious liability.

Plaintiff seeks compensatory, special, and punitive damages against all Defendants, as well as

attorneys' fees and costs.

The instant motion to dismiss raises numerous arguments as to why each claim should be

dismissed.  The undersigned will consider each in turn.

*A.  Improper Service of Process*

Defendants seek dismissal of the claims against Defendants Chief Zordan, Antley, and

Simms under Rules 12(b)(2) and 12(b)(5), arguing that this Court lacks personal jurisdiction over

these Defendants because they were not properly served.  The service returns filed by Plaintiff

indicate that each Defendant was "personally served" at the MPD through Brown, an employee

there.  *See* [doc. #6].  However, Defendants argue that service on Brown was insufficient to effect service on Chief Zordan, Antley, and Simms.

In her opposition, Plaintiff insists that Chief Zordan, Antley, and Simms were properly served through a neutral process server and claims that "the proof of service by the neutral service processor constitutes prima facie evidence that the Defendants received a copy of the summons directed to them."  [doc. #20, p. 11].  Plaintiff also argues that "Defendants provide no evidence of being improperly or insufficiently served."  *Id.*

In their reply brief, Defendants clarify that they do not dispute the validity of the service *return*, but that the service return shows only that Chief Zordan, Antley, and Simms "were served *improperly* through another person [i.e., Brown]."  [doc. #23, p. 2].  Defendants also reject Plaintiff's assertion that Defendants have not produced any evidence showing improper service, and point to the affidavits that Chief Zordan, Antley, and Simms submitted.

An officer sued in his individual capacity must be served pursuant to Federal Rule of Civil Procedure 4(e).  *Harris v. Brown*, No. 21-CV-01332, 2021 WL 6329806, at *7 (W.D. La. Dec. 22, 2021); *see also* FED. R. CIV. P. 4(e).  Under Rule 4(e), the plaintiff may serve the summons and complaint (1) personally on the defendant; (2) on someone of suitable age and majority who resides at the defendant's usual place of abode; (3) on an authorized agent of the defendant; or (4) in accordance with state law.  FED. R. CIV. P. 4(e).  Applicable Louisiana law provides that an individual may be served through personal or domiciliary service, or through an authorized agent.  LA. CODE CIV. PROC. arts. 1231-1235.  "Service on a police department, other officers or police station staff is generally insufficient to effect service on a police officer sued in his individual capacity."  *Brown v. Lafayette City-Parish Consol. Gov't*, No. 13-CV-2436, 2014 WL 1212699, at *1 (W.D. La. Feb. 28, 2014) (collecting cases).

On the other hand, service of an officer sued in his official capacity is governed by Rule 4(j)(2). *See Gilmore v. Wolfe*, 15-CV-00280, 2016 WL 438978, at *2 (M.D. La. Feb. 3, 2016). Under Rule 4(j)(2), a plaintiff may serve an officer by delivering a copy of the summons and complaint (1) to the organization's chief executive officer ("CEO"); or (2) in the manner prescribed by Louisiana law for serving such a defendant. Under Louisiana Code of Civil Procedure Article 1265, "[a] public officer, sued as such, may be served at his office either personally, or *in his absence,* by service upon any of his employees of suitable age and discretion."[3] LA. CODE CIV. PROC. art. 1265 (emphasis added).

Here, contrary to Plaintiff's assertions, Chief Zordan, Simms, and Antley were not properly served in their individual capacities. The return indicates that service was made on Brown at the MPD. This purported service is insufficient to effect personal or domiciliary service. *See Carmouche v. Garber,* No. 19-CV-00023, 2020 WL 733236, at *2 (W.D. La. Feb. 12, 2020) ("Neither federal law nor state law permits service on an individual by delivering the papers to the person's workplace."). Moreover, Chief Zordan, Simms, and Antley affirmatively aver that they have not "authorized" or "appointed" Brown to accept service on their behalf, and Plaintiff provides no contrary evidence. [doc. #14-2]. Thus, service on Chief Zordan, Simms, and Antley was insufficient, and this Court lacks personal jurisdiction over these Defendants in their individual capacities.

Nor did Plaintiff properly serve Chief Zordan, Simms, or Antley in their official capacities. As explained *supra*, Plaintiff attempted to serve these Defendants through Brown.

---

[3]Article 1265 also provides that service of citation or other process "on any political subdivision . . . is made at its office by personal service upon the chief executive officer thereof, or in his absence upon any employee thereof of suitable age and discretion." However, Defendants do not contest service on the City itself.

Brown is not the organization's CEO, and Plaintiffs have not demonstrated that Brown was served because Chief Zordan, Antley, and Simms were absent from work. Thus, the attempted service on these Defendants is void.

Plaintiff urges that if the undersigned finds that Chief Zordan, Antley, and Simms were improperly served, that Plaintiff be given additional time to serve them in lieu of dismissal. Defendants respond that Plaintiff's request should be denied for two reasons: (1) she knowingly relied on improper service after having been informed of this issue six days earlier in the context of another case, *Williams v. City of Monroe, et al.*, Civ. No. 3:21-1061 (W.D. La.),[4] and (2) she has made no attempt to remedy the deficiencies in the ensuing months. The undersigned agrees. This case has been pending for almost one year, and, even absent the filings in the *Williams* case, they have known in this case of Defendants' contentions for over six months.

Therefore, IT IS RECOMMENDED that the Court DISMISS WITHOUT PREJUDICE Plaintiff's claims against Chief Zordan in his official capacity. IT IS FURTHER RECOMMENDED that the Court DISMISS WITHOUT PREJUDICE Plaintiff's claims against Simms and Antley in their individual capacities. With regard to the claim against Chief Zordan in his individual capacity, Plaintiff states in her opposition that she does not oppose dismissal of this claim with prejudice. Accordingly, IT IS FURTHER RECOMMENDED that this claim be DISMISSED WITH PREJUDICE. IT IS FURTHER RECOMMENDED that the claims against Simms and Antley in their official capacities be DISMISSED WITHOUT PREJUDICE with the exception of any punitive damages claims against them. Plaintiff also states in her opposition

---

[4]The pending case is a matter of public record, of which the undersigned may take judicial notice. At least as to service of officers in their individual capacities, the same counsel did not contest the same arguments, instead requesting additional "time to properly effect service on these Defendants in their individual capacity . . ." [doc. #31, p. 12].

that she does not oppose dismissal of the punitive damages claims against Simms and Antley in their official capacities with prejudice.[5]  Therefore, IT IS FURTHER RECOMMENDED that only Plaintiff's punitive damages claim against Simms and Antley in their official capacities be DISMISSED WITH PREJUDICE.

### B.  Voluntarily Dismissed and Abandoned Claims

In her opposition memorandum, Plaintiff affirmatively states that she does not oppose dismissal of claims for punitive damages against the City and against the Officers in their official capacities and dismissal of her claim against Chief Zordan in his individual capacity.

In their reply memorandum, Defendants point out that, by failing to respond, Plaintiff has also abandoned claims for (1) bystander liability; (2) conspiracy; (3) against Crum in his official capacity; and (4) for punitive damages against any Defendant under state law.  [doc. #20, p. 10].  A claim is abandoned if the plaintiff fails to defend it in response to a motion to dismiss.  *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Scales v. Slater*, 181 F.3d 703, 708 n.5 (5th Cir. 1999).  The Court may properly dismiss with prejudice a claim that has been abandoned.  *See Barker on Behalf of Barker v. City of Plaquemine*, No. 17-CV-340, 2019 WL 4580047, at *11 (M.D. La. Sept. 20, 2019).  By failing to address Defendants' arguments relating to these additional claims, Plaintiff has abandoned them.

Accordingly, IT IS RECOMMENDED that the Court DISMISS the following claims WITH PREJUDICE:  (1) punitive damages against the City; (2) punitive damages against Simms

---

[5] If Plaintiff objects to the dismissal with prejudice of the claim against Chief Zordan in his individual capacity or to the dismissal with prejudice of the punitive damages claims against Antley and Simms in their official capacities, she has the opportunity to raise objections in the fourteen-day period prior to consideration by Judge Doughty.

and Antley; (3) claims against Chief Zordan in his individual capacity[6]; (4) claims for bystander liability; (5) claims of conspiracy; (6) claims against Crum in his official capacity; and (7) claims for punitive damages against any Defendant under state law.  [doc. #20, p. 10].

C.  *Remaining Constitutional Claim under § 1983 Against Crum*

As a result of the undersigned's determinations, only the claims against Crum in his individual capacity remain.[7]  Specifically, Plaintiff argues that Crum violated Grant's Fourteenth Amendment rights by acting with deliberate indifference to his medical needs.  In response, Defendants claim that Crum was not deliberately indifferent to Grant's medical needs and that, further, he is shielded by qualified immunity.

To establish that an officer denied or delayed medical care in violation of the Constitution, the plaintiff must show that (1) the officer was aware of the facts which would allow him to infer a substantial risk of serious harm; (2) the officer drew the inference; and (3) the officer responded with deliberate indifference.  *Garza v. City of Donna*, 922 F.3d 626, 635-36 (5th Cir. 2019).  The plaintiff may show deliberate indifference by showing that an officer "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Baughman v. Hickman*, 935 F.3d 302, 309 (5th Cir. 2019) (quoting *Perniciaro v. Lea*, 901 F.2d

---

[6] For the reasons previously stated, the undersigned already recommended dismissal with prejudice of the claims against Chief Zordan in his individual capacity and the punitive damages claims against Antley and Simms in their official capacities, but lists these claims again in an abundance of caution.

[7] Neither Defendants nor the undersigned read Plaintiff's First Amended Complaint to assert a claim for excessive force regarding the period of time after Grant was tased.  Therefore, neither Defendants' motion nor this Report and Recommendation have addressed an excessive force against Crum.  However, if Plaintiff intended to state an excessive force claim for any conduct after Grant was tased, she may so indicate during the objection period to this Report and Recommendation.

241, 258 (5th Cir. 2018)) (internal citations and quotations omitted).  Further, a delay in medical treatment is only actionable if it results in substantial harm.  *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006).

The doctrine of qualified immunity insulates government officials from individual liability for discretionary acts performed in their jobs.  "Although nominally an affirmative defense, the plaintiff has the burden to negate the defense [of qualified immunity] once properly raised."  *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).  The qualified immunity analysis consists of two prongs: "(1) whether the facts alleged or shown by the plaintiff made out a violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the defendant's alleged misconduct."  *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009).  The district court may conduct the two-part analysis in any order.  *Pearson v. Callahan*, 555 U.S. 223, 235 (2009).

Defendants argue that Crum was not deliberately indifferent to Grant's medical needs because there was no meaningful delay between when Grant was tased and when he received medical attention and, thus, there can be no constitutional violation.

In her opposition, Plaintiff concludes that, in this case, the deliberate indifference standard "was easily shown to be met" because "Defendants waited for the period of time to offer . . . Grant care."  [doc. #20, p. 13].  Plaintiff also alleges that "Defendants should be aware of when medical treatment should be administered."  *Id.*

In reply, Defendants contend that the facts set forth in the report prepared by a Louisiana State Police investigator ("the Report"), and otherwise relied upon by Plaintiff, show that Grant received timely medical treatment, specifically, that Grant was assessed and given CPR at the

13

scene.  Defendants urge that, even if there was a short delay in rendering medical aid to Grant, this does not rise to the level of a constitutional violation.

Here, Plaintiff has failed to allege facts from which the Court may infer that she has an actionable claim for a delay in medical treatment after Grant was tased.[8]  Plaintiff alleges in her First Amended Complaint as follows:

> On August 26, 2020, Defendant, Robert Simms, was dispatched to the area of Winnsboro Road and Wilson Street in reference to a crash investigation, whereby Mr. Grant was involved in a car crash with another driver, which caused a serious impact. (Exhibit A) Monroe Police Department contacted Louisiana State Police Detectives in reference to the in-custody death that later ensued. According to the Louisiana Department of Public Safety & Corrections Office of State Police Initial Complaint/Report, Captain Marlow stated that Mr. Grant was found standing on the top of the 2013 Toyota Highlander and would not comply with officers' requests and attempted to flee the scene. It further states that officers deployed a taser and struggled to take Mr. Grant into custody and handcuff him. A probe was used by Officer Robert Simms, while Officers Timothy Antley, and Timothy Crum held him down. The probe was discharged twice per the report against Grant.[9] Captain Marlow reported that the officers searched Mr. Grant for weapons and ID and found him unresponsive later. Grant was moaning and not posing any threats during this surrender. A period of time went by while Grant laid helpless on the ground with no movement and his head in the dirt/grass, while the officer continued to hold him down firmly. Subsequently, Captain Marlow asserts that EMS and Fire were requested and CPR was initiated; however, too much time had passed, and Mr. Grant was dead at that time. This electronic control weapon was against Grant at least twice thus attacking his heart with massive amounts of electricity.  Even though Mr. Grant showed no sign of life on the scene after being tased with lethal, unjustified force, the report indicates that Mr. Grant was transported to St. Francis Hospital by ambulance and

---

[8] Plaintiff also claims that the Officers were deliberately indifferent to Grant's medical needs by failing to render help immediately after the accident.  However, Crum did not arrive on scene until after Grant was tased and, thus, any delay or denial in medical care at that time is inapplicable to him.  As for Simms, the only officer who was at the scene immediately after the accident, it has been recommended that all claims against him be dismissed.

[9] Plaintiff's factual allegations that Crum and Antley held Grant down while Simms tased him and that Simms deployed his taser twice are plainly contradicted by the Report.  The Report provides that Simms tased Grant prior to Antley and Crum's arrival.  Further, the Report indicates that Simms discharged his taser once, but that it released two probes.  [doc. #1-2, pp. 18-24].  The undersigned has credited the Report in these instances because it has otherwise been relied upon by Plaintiff and the Report is supported by witness testimony and body camera footage.

later pronounced dead in the emergency room. (Exhibit B)

[doc. #3, pp. 3-4]. In support of her delayed treatment claim, Plaintiff claims that "[t]here was a

period of time that matriculated before [Officers] tried to offer any type of care. It was late that

EMS and Fire was [sic] called to assist in resuscitate [sic] Grant." [doc. #3 ¶ 7].

However, the Report of the incident, attached by Plaintiff as Exhibit B [doc. #1-2] to her

Complaint,[10] establishes, based on body camera footage, that only four minutes passed from the

time that Simms tased Grant to when Antley discovered that he was unresponsive. During these

four minutes (and only two minutes from the time Grant was taken into custody), the Officers

were triaging the incident that had just occurred by securing Simms's taser, advising dispatch

that Grant was in custody, and checking on the other vehicle involved in the accident. The

Report details that as soon as the Officers determined that Grant was unresponsive, instructions

were given to "roll him up" and immediately after, the paramedic arrived and began checking on

Grant. The paramedic then performed a sternal rub on Grant, rolled him over, unhandcuffed

him, and performed a second sternal rub. The Officers and paramedics put Grant in a seated

position and Antley performed a third sternal rub, then began chest compressions. Shortly after,

the paramedics relieved Antley of patient care and the Officers' contact with Grant ceased. In

short, the Officers provided medical care to Grant less than four minutes after he was tased, less

than two minutes after he was in custody, and less than ten seconds after Antley realized that he

was unresponsive. Thus, reviewing the record, Plaintiff has failed to present facts indicating that

---

[10]The undersigned has determined that the First Amended Complaint is controlling in this matter
and that it did not incorporate the factual allegations set forth in the Original Complaint, but that
Plaintiff did intend to incorporate the previously attached exhibits, including the Report of
Louisiana State Police Investigator John Asmussen. The Report was attached as Exhibit B and
filed at [doc. #1-2, pp. 8-31].

Crum was deliberately indifferent to Grant's medical needs because there was no meaningful or intentional delay in medical care.

Accordingly, IT IS RECOMMENDED that the Court DISMISS WITH PREJUDICE Plaintiff's claim against Crum in his individual capacity for deliberate indifference to Grant's medical needs.

### D.  Plaintiff's § 1983 Claims Against the City

Plaintiff appears to state claims against the City for (1) unconstitutional policies and practices; (2) failure to train and supervise; and (3) ratification.  Although the claims themselves are distinct, the parties' arguments as to all three are virtually identical.  In their motion, Defendants argue that Plaintiff's claims amount to no more than generalized allegations and recitation of legal principles.  As to the first claim, Defendants argue that Plaintiff fails to point to a single policy statement, ordinance, regulation, decision, or custom employed by the City. For the second claim, Defendants contend that Plaintiff fails to allege how the City's training programs are inadequate.  Finally, for the last claim, Defendants argue that Plaintiff fails to allege a single fact showing that the City ratified the Officers' actions.

In her opposition brief, Plaintiff does not substantively respond to Defendants' arguments.  Instead, she merely argues that the allegations in the First Amended Complaint "establish an expectation that discovery will reveal relevant evidence of, a custom of tolerance or acquiescence of federal rights violations by the City of Monroe and its police department officers."  [doc. #20, p. 9].

### i.  Claims for Unconstitutional Policies and Practices

"A municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978).  It may only "be held

liable under § 1983 when 'execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Doe on Behalf of Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998) (quoting *Monell*, 436 U.S. at 694). This requires the plaintiff to show "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Newbury v. City of Windcrest, Tex.*, 991 F.3d 672, 680 (5th Cir. 2021) (internal quotation and citation omitted). An official municipality policy "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Here, Plaintiff fails to allege with any particularity a City policy or custom of which any policymaker had actual or constructive knowledge, or that any City policy or custom brought about a violation of Grant's constitutional rights. Plaintiff's First Amended Complaint alleges as follows:

21.

Defendants['] actions were a product of this environment and undertaken pursuant to de facto policies, practices, and/or customs—both written and unwritten—of the MPD and the City of Monroe. Defendant, Victor Zordan, is guilty of the following wrongful acts, including but not limited to:

1. Failing to properly hire, supervise, and train MPD Officers;

2. Failing to act promptly to Grant's medical needs by acting indifferent to his injuries and trauma from the car wreck which occurred prior to his death;

3. Failing to promulgate, train, and enforce an adequate and constitutional use of force policy;

4. Failing to promulgate, train, and enforce an adequate and constitutional lethal use of force policy;

17

5. Failing to promulgate, train, and enforce an adequate and constitutional de-escalation tactics;

6. Failing to promulgate, train, and enforce an adequate and constitutional methods through which MPD officers should interact with citizens who are African American and homeless;

7. Failing to promulgate, train, and enforce an adequate and constitutional non-discriminatory law enforcement practices to protect African-American citizens of Monroe;

8. Failing to reprimand and discipline MPD Officers who engage in misconduct;

9. Failing to retrain and/or otherwise control MPD Officers who engage in excessive force and/or unjustified shooting against civilians;

10. Failing to follow appropriate policies and procedures to address and correct repeated use of excessive force;

11. Failing to adequately investigate complaints and allegations of excessive force and other misconduct by MPD Officers;

12. Failing to require and enforce MPD officers to accurately and timely report misconduct they are aware other MPD officers are conducting or have conducted;

13. Failing to retrain and otherwise control MPD Officers who engage in excessive force and unjustified use of deadly force;

14. Failing to properly investigate allegations prior to issuing arrest warrants;

15. Tacitly approving of MPD Officers using their power and position to interfere with other citizens' rights;

16. As a matter of both policy and practice the City of Monroe and the MPD facilitating this type of misconduct by failing to protect civilians from reckless indifference of Defendant's agents, servants, and employees in its Police Department; and

17. Allowing the practice and custom of a "police code of silence," resulting in MPD Officers refusing to report instances of police misconduct of which they are aware.

18. Failing to train, supervise, and discipline MPD officers regarding providing honest and accurate accounts of officer involved shootings to investigating authorities[.]

18

[doc. #3, ¶ 21]. While this list is lengthy, these are merely generalized allegations about such policies and customs. The undersigned addresses Plaintiff's claim for failure to train and/or supervise separately, but, with regard to the other allegations, Plaintiff does not cite to any examples, nor does she relate them to events leading up to Grant's death. Moreover, Plaintiff's assertion in her reply brief that "discovery will reveal relevant evidence of, a custom of tolerance or acquiescence of federal rights violations by the City," does not save her claim because Plaintiff has not made factual allegations sufficient to conjure a reasonable expectation that discovery will reveal evidence of these purported policies and customs. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) ("Asking for plausible grounds . . . simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence.").

Accordingly, IT IS RECOMMENDED that Plaintiff's *Monell* claim against the City for unconstitutional policies and customs be DISMISSED WITH PREJUDICE.

ii.    *Claim for Failure to Train and/or Supervise*

To state a claim for a failure to train or supervise, the plaintiff must plead facts that plausibly show "(1) the municipality's training procedures were inadequate; (2) the municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the constitutional violations in question." *Jackson v. Valdez*, 852 Fed. App'x 129, 135 (5th Cir. 2021) (citing *World Wide St. Preachers Fellowship v. Town of Colomb.*, 591 F.3d 747, 756 (5th Cir. 2009)). The plaintiff must show that the municipality was deliberately indifferent by pleading facts that show a pattern of similar violations or showing that the municipality provided no training at all. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010) (internal quotations and citations omitted).

Here, Plaintiff has failed to raise a plausible claim against the City based on its alleged failure to train and/or supervise officers.  Plaintiff does not contend that the City lacked training procedures altogether or that was a history of similar violations resulting from a lack of training or supervisor.[11]  Indeed, Plaintiff does not allege how the City's training procedures are inadequate, stating only that "the City . . . is responsible for the . . . training, supervising, and the retraining of the Monroe Police Officers to ensure each officer was and is qualified and properly trained to perform the duties and functions of a peace officer."  [doc. #3 ¶ 17].  Finally, Plaintiff fails to allege that the City was deliberately indifferent in implementing these procedures or to make specific allegations as to how these procedures resulted in a violation of Grant's constitutional rights.

Thus, IT IS RECOMMENDED that Plaintiff's *Monell* claims against the City for failure to train and/or supervise also be DISMISSED WITH PREJUDICE.

*iii.    Claim for Ratification*

Finally, Defendants' move for dismissal of Plaintiff's claim for ratification.  A municipality may be held liable for a policy or custom if "the authorized policymakers approve a subordinate's decision and the basis for it" because "their ratification would be chargeable to the municipality[.]"  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).  To state a claim for ratification, the moving party must allege facts showing that a "policymaker knowingly approve[d] a subordinate's actions and the improper basis for those actions."  *Covington v. City*

---

[11] To be sure, Plaintiff generalizes that "[t]his death is also one similar to the incidents occurred by MPD on the following victims:  David Harris, Timothy Williams, Aaron Bowman, and Alphonso Brown."  [doc. #3, ¶ 20].  However, she provides no factual allegations from which the undersigned could infer that there was a lack of training and supervision or a widespread practice to constitute the type of custom necessary to support a *Monell* claim.  How are these deaths similar?  What lack of training or supervision caused these deaths, as well as Mr. Grant's death?

*of Madisonville, Tex.*, 812 Fed. App'x 219, 228 (5th Cir. 2020) (internal citations omitted). "[U]nless the subordinate's actions are sufficiently extreme – for instance, an obvious violation of clearly established law – a policymaker's ratification . . . is insufficient to establish an official policy or custom." *Young v. Bd. Of Sup'rs of Humphreys Cnty., Miss.*, 927 F.3d 898, 904 (5th Cir. 2019) (quoting *World Wide*, 591 F.3d at 755) (internal quotations omitted).

Plaintiff has also failed to state a claim for ratification. Plaintiff does not make a single allegation as to how the City ratified or condoned the Officers' alleged misconduct. In fact, the only allegation of the aftermath of the incident – that the Officers were placed on administrative leave – undermines Plaintiff's ratification claim. Thus, IT IS RECOMMENDED that the Court DISMISS WITH PREJUDICE Plaintiff's claim against the City for ratification.

E. *State Law Claims*

Plaintiff alleges the following state law claims against the Officers: (1) assault; (2) battery; (3) aggravated battery; (4) wrongful death; (5) negligent infliction of emotional distress; (6) intentional infliction of emotional distress; and (7) malfeasance in office. [doc. #3 ¶ 26]. Plaintiff also claims that the City is vicariously liable for the Officers' actions. *Id.* at ¶ 28.

The undersigned has recommended that the Court dismiss all of Plaintiff's federal law claims, as well as additional claims that she has either voluntarily dismissed or abandoned. Thus, the Court's only basis for subject matter jurisdiction over the claims remaining in this lawsuit is through supplemental jurisdiction, 28 U.S.C. § 1367(c).[12] Section 1367(c) provides federal district courts the discretion to exercise or decline supplemental jurisdiction after dismissing all claims over which the court has original jurisdiction. *See Carlsbad Tech., Inc. v.*

---

[12] Plaintiff's First Amended Complaint alleges that all individual parties are domiciled in Louisiana. Thus, diversity jurisdiction does not exist. *See* 28 U.S.C. § 1332.

*HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).  When all federal claims in a case have been disposed

of before trial, the district court should use its discretion to decline to exercise supplemental

jurisdiction over the remaining state law claims.  *Brim v ExxonMobil Pipeline Co.*, 213 Fed.

App'x 303, 305 (5th Cir. 2007).  In "case[s] in which all federal-law claims are eliminated before

trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial

economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction

over the remaining state-law claims."  *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972

F.2d 580, 586-87 (5th Cir. 1992) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 n.7

(1988)) (quotations omitted).

Here, the weight of these factors clearly indicates that the Court should decline to

exercise supplemental jurisdiction over the remaining state law claims.  First, judicial economy

would be best served by declining to exercise jurisdiction because this case is still in the very

early stages of litigation.  This suit was filed in August of 2021, less than one year before the

date of this report and recommendation.  [doc. #1].  No discovery has been performed, nor have

any consequential motions, other than the instant motion to dismiss, been filed.  Second,

declining to exercise supplemental jurisdiction is not inconvenient to the parties as they will not

have to perform a significant amount of redundant or burdensome work if the state law claims

are brought again in state court, especially considering Plaintiff's failure to properly serve three

Defendants and the necessity of re-filing against those Defendants.  Third, federalism and comity

weigh in favor of declining jurisdiction because the remaining issues involve questions of

substantive Louisiana law.  Although issues of intentional tort, negligence, and vicarious liability

are not particularly complex or novel, they are inherently state law issues which should be

decided by Louisiana state courts.  Finally, dismissing the state law claims is not unfair to either

party.  The claims will be dismissed without prejudice, allowing Plaintiff to bring the remaining

state law claims, should she choose, in state court.

Accordingly, IT IS RECOMMENDED that the Court DISMISS WITHOUT

PREJUDICE Plaintiff's state law claims.

### F.  Leave to Amend

In her opposition brief, Plaintiff requests that "if this Court is inclined to grant the

Defendants' motion, Plaintiffs request that they be afforded an opportunity to amend their

complaint to correct any deficiencies identified by the Court."  [doc. #20, p. 16].  However, such

a "bare request in an opposition to a motion to dismiss – without any indication of the particular

ground on which the amendment is sought – does not constitute a motion within the

contemplation of Rule 15(a)." *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d

375, 387 (5th Cir. 2003).  Even if Plaintiff had filed the proper motion, however, amendment

would likely be futile.  In this case, it appears that Plaintiff has provided all factual allegations to

support her claims, and to the extent reviewed,  the undersigned has found them lacking under

the requisite standard.  If Plaintiff has additional facts supporting her claims, she may seek to

raise these allegations allege them during the time period for the filing of objections to the instant

report and recommendation.

## IV.    CONCLUSION

According, **IT IS RECOMMENDED** that Defendants' motion be **GRANTED IN**

**PART and DENIED IN PART.**  To the extent that Defendants seeks dismissal of the claims

against Chief Zordan, Antley, and Simms for lack of proper service, **IT IS RECOMMENDED**

that the Court **DISMISS WITHOUT PREJUDICE** Plaintiff's claims against Chief Zordan in

his official capacity and Plaintiff's claims against Simms and Antley in their individual

capacities.  **IT IS FURTHER RECOMMENDED** that the claims against Simms and Antley in their official capacities be **DISMISSED WITHOUT PREJUDICE** with the exception of any punitive damages claims against them, which are to be **DISMISSED WITH PREJUDICE.**

     **IT IS FURTHER RECOMMENDED** that the Court **DISMISS WITH PREJUDICE** Plaintiff's (1) *Monell* and punitive damages against the City; (2) claims for bystander liability; (3) claims of conspiracy; (4) claims against Crum in his official and individual capacity; and (7) claims for punitive damages against any Defendant under state law.

     **IT IS FURTHER RECOMMENDED** that the Court decline to exercise supplemental jurisdiction and **DISMISS WITHOUT PREJUDICE**  Plaintiff's remaining state law claims.

     Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

     **A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE in Chambers on this 15th day of August, 2022

_____
KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE